UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNDRAY KNIGHTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:09-cv-333-SEB-TAB |
| ) | |
| DR. MICHAEL MITCHEFF, in his ) | |
| individual capacity, CARLA FOSTER, ) | |
| OFFICER SPRINGFIELD, OFFICER ) | |
| NIBBLE, SGT. SURBISKY, OFFICER ) | |
| MILLER, LT. BROOKS, OFFICER ) | |
| LEONARD, and OFFICER HOOD, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This cause is now before the Court on the Motion for Partial Summary Judgment [Docket No. 52], initially filed by Defendants Carla Foster and Michael Mitcheff, M.D. on December 16, 2009, and later joined by Defendants Travis Leonard, Johnny Hood, and Dianna Brooks on March 19, 2010. Plaintiff, Undray Knighten, filed this lawsuit alleging Eighth Amendment violations under 42 U.S.C. § 1983 against Defendants. Specifically, Mr. Knighten alleges that: (1) Defendants failed to provide adequate medical care relating to the timely treatment and diagnosis of his colon cancer; and (2) Defendants failed to provide adequate medical care relating to his post-operative needs. Defendants have moved for summary judgment on Mr. Knighten's second allegation, arguing that Mr. Knighten failed to file any grievances complaining of his post-operative treatment before

filing this cause of action as required by the Prison Litigation Reform Act, and thus, failed to exhaust his administrative remedies within the meaning of 42 U.S.C. § 1997(e)(a). For the reasons detailed in this entry, we DENY Defendants' Motion for Partial Summary Judgment.

**Factual Background**

The factual allegations pertinent to the Motion for Partial Summary Judgment currently before the Court are as follows: Mr. Knighten alleges that, during the time period of October 2008 to February 2009, both while he was housed at Wabash Valley Correctional Facility ("Wabash Valley") and following his transfer to Pendleton Correctional Facility ("Pendleton"), prison staff repeatedly cancelled his medical appointments relating to the care of his ostomy site, which resulted in the ostomy site becoming swollen, bloody, and infected so badly that part of his stomach changed color. Defendants contend that Mr. Knighten failed to exhaust his administrative remedies with respect to these allegations by failing to follow the available prison grievance procedures before bringing the instant litigation. Mr. Knighten rejoins that he tried to utilize the available administrative remedies and that any failure to complete the formal grievance process was not due to a failing on his part, but was the result of Defendants making those remedies unavailable to him.

It is undisputed that both Wabash Valley and Pendleton had identical three-step grievance processes in place during the time period relevant to this litigation. In both

correctional facilities, the grievance process is initiated when a prisoner makes an informal grievance, to wit, contacts a prison staff member to verbally discuss the subject of his grievance and seek an informal resolution. If the problem is not resolved informally in a manner that satisfies the prisoner, he may submit a written grievance, called a "Level I Grievance," to the Grievance Specialist at the correctional facility where he is confined. If the problem is still not addressed to the prisoner's satisfaction, he may submit an appeal, known as a "Level II Grievance." Exhaustion of the grievance process requires pursuing a grievance to the final step.

      Defendants contend that, although Mr. Knighten had properly utilized the grievance process on other occasions, and thus knew how the process worked, he failed to file any grievances relating to the treatment, care, or replacement of his colostomy bags or ostomy site. Teresa Littlejohn, the Grievance Specialist at Wabash Valley, testified by affidavit that the Department of Corrections ("DOC") has a record of the following three grievances filed by Mr. Knighten during the relevant time period: (1) medical grievance #15742, filed on July 10, 2006, relating to the treatment of his foot and hemorrhoids; (2) medical grievance #15742, filed on July 27, 2006, appealing the July 10, 2006 grievance; and (3) a grievance filed on August 18, 2009, alleging racial discrimination against a correctional officer at Wabash Valley.[1] According to Ms. Littlejohn, there is no record of

---

[1] There is a record of a fourth complaint, dated December 3, 2008, regarding reimbursement of funds withdrawn from Mr. Knighten's account following a medical visit. However, Ms. Littlejohn testified that the December 3, 2008 grievance was not ultimately filed with the DOC.

Mr. Knighten having filed any other grievances during the time period at issue in this litigation either while he was housed at Wabash Valley or after his transfer to Pendleton.

Mr. Knighten, however, contends that he did utilize the grievance process to complain of denial of medical care relating to the treatment, care, and maintenance of his ostomy site and colostomy device, but never received a response from prison staff members regarding his Level I grievances, so he was unable to proceed to the final step in the grievance process. According to Mr. Knighten, he initiated the grievance process by making informal complaints to his counselor at Pendleton, Samantha Maddox, about his alleged failure to receive proper medical attention for his ostomy site and colostomy device and also spoke with Defendant Brooks about the issue. He contends that, when the problems continued, he submitted a Level I grievance to Ms. Maddox in November 2008, complaining of the same issues and requested that she place the grievance in the grievance department's drop box for him.

After receiving no response to his grievance, Mr. Knighten asked Ms. Maddox to make copies of the grievances he submitted to her thereafter so he could keep them for his records. Mr. Knighten has submitted into evidence copies of three subsequent grievance forms that he contends were submitted to the grievance department, dated January 26, 2009, February 3, 2009, and February 9, 2009, respectively. The first two grievance forms address the prison's failure to provide adequate medical care and treatment for his ostomy site and the third grievance form addresses the lack of a response to the prior grievances. Mr. Knighten alleges that he gave each of these forms to Ms. Maddox to

submit to the grievance department for him. In addition to the grievances he allegedly gave to Ms. Maddox, Mr. Knighten contends that he also spoke to Officer Timothy Nickles, Pendleton's grievance officer, on three or four occasions about his grievances and sent a letter dated February 9, 2009 to Superintendent Mizes, complaining about not receiving a response to his complaints and attaching copies of the January 26th, February 3rd, and February 9th grievance forms.

Ms. Maddox testified by affidavit that, in the course of her duties as corrections counselor, it was common for inmates to request that she submit grievances for them and that she would routinely accept such grievances and drop them off in the grievance drop box for the grievance personnel to review. She was also available to assist prisoners who believed they had properly submitted grievances but had not received confirmation of the filing. Ms. Maddox further testified that she could not recall whether Mr. Knighten had given her grievances to submit to the prison grievance counselor between November 2008 and February 2009, but that she did not specifically remember Mr. Knighten ever giving her grievances to file with the grievance department or requesting that she follow-up on the status of any grievance he had asked her to file during that time period. If he had, however, Ms. Maddox testified that it would have been her practice to file any grievances given to her or to contact the grievance department if that was requested.[2]

---

[2] There is evidence in the record that, on January 21, 2009, Ms. Maddox contacted Officer Nickles via e-mail regarding Mr. Knighten's request for a refund for medical services rendered, stating: "Have you made a decision on his grievance yet? He's wondering. It's the one regarding a refund for medical services for chronic care." Pl.'s Exh. 6.

**Legal Analysis**

I.  **Standard of Review**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255.

However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

II.  **The Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). "In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)). Exhaustion is required even if the prisoner believes that exhaustion is futile. Dole v. Chandler, 438 F.3d 804, 808-09 (7th Cir. 2006).

An inmate is required to exhaust only those remedies that are available to him, however. Wilder v. Sutton, 2009 WL 330531, at *3 (7th Cir. Feb. 11, 2009) (citing Woodford v. Ngo, 548 U.S. 81, 102 (2006); Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)). "[A] remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." Dole, 438 F.3d at 809 (citations omitted). The availability of remedies "is not a matter of what appears on paper, but, rather, whether the paper process was in reality open for the prisoner to pursue." Wilder, 2009 WL 330531, at *3 (citing Kaba, 458 F.3d at 684). A prisoner will be found to have exhausted available remedies if prison officials ignored, obstructed, or mishandled the grievance filed or sought to be filed by the prisoner. See Dole, 438 F.3d at 809. On the other hand, if it is the prisoner who has made a mistake in utilizing the grievance process, then his claims must be dismissed for failure to exhaust available administrative remedies. Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008).

The failure to exhaust as required by the PLRA is an affirmative defense. It is a defendant's burden to prove that a prisoner failed to exhaust available administrative remedies. Dale, 376 F.3d at 655. This affirmative defense must be resolved before reaching the merits of the claims and the question of exhaustion is one which the court is to decide. See Pavey, 544 F.3d at 742.

**III.   Discussion**

The materials pertaining to Defendants' motion for partial summary judgment reveal a genuine dispute of material fact regarding what steps, if any, Mr. Knighten took to exhaust his administrative remedies with respect to his complaints regarding his post-operative treatment before filing this action. In support of their motion for partial summary judgment, Defendants submit the affidavit of Teresa Littlejohn, the facility Grievance Specialist at Wabash Valley. Ms. Littlejohn states in her affidavit that according to the DOC's records, although on at least three occasions Mr. Knighten filed grievances complaining of issues unrelated to this litigation, there is no record of Mr. Knighten filing a grievance "relating to the treatment, care or replacement of his colostomy bags," which is the subject of some of his claims in this litigation. Littlejohn Aff. ¶ 16. Accordingly, Defendants argue that he has failed to exhaust his administrative remedies as to any claims relating to his post-operative treatment. Mr. Knighten, on the other hand, contends that he attempted to submit a number of grievances regarding his post-operative treatment, including the care and replacement of his colostomy bags, but

8

received no response from prison officials. Thus, he claims that any failure to exhaust on his part was innocent and due to the prison officials' mismanagement of his complaints, which rendered his administrative remedies unavailable.

In his affidavit, Mr. Knight testified that, in November 2008, he submitted to Ms. Maddox his first grievance addressing the claims he presents in this cause of action and requested that she put the complaint in the grievance drop box for him,[3] but that he never received a response from prison officials. Mr. Knighten thereafter asked Ms. Maddox to make copies of the subsequent grievances he claims that he completed. He has submitted into evidence copies of two additional grievances dated January 26, 2009 and February 3, 2009, respectively, addressing his post-operative treatment, and, a third grievance dated February 9, 2009, complaining of the lack of a response to his previous grievances. He has testified that he gave Ms. Maddox each of these forms to submit to the grievance department, but never received a response.[4] In addition, Mr. Knighten has testified that he spoke with a grievance officer, Officer Nickles, on three or four occasions regarding

---

[3] We note that the fact that Mr. Knighten concedes that he did not submit his grievance forms to the grievance department directly is not, by itself, determinative of the issue of exhaustion. Ms. Maddox testified that it was the practice of many prisoners to give their grievance forms to her to deposit in the grievance department drop box for them and there is no indication in the record that grievances submitted in such a fashion were dealt with any differently than those filed directly by inmates themselves. Thus, although such a procedure may not have been in complete compliance with the explicit terms of the grievance process, it appears to have been the manner in which the process worked in practice.

[4] In her affidavit, Ms. Maddox testified that she does not specifically remember Mr. Knighten giving her these grievances to file, but that she cannot say for sure that he did not do so.

9

the lack of a response and also sent a letter dated February 9, 2009 to the prison superintendent, Superintendent Mizes, complaining about the situation and requesting that Mizes address the problem, but still received no assistance.

Because Defendants are the movants and bear the burden of proving the affirmative defense of lack of exhaustion, we must "extract all reasonable inferences from the evidence in the light most favorable to" Mr. Knighten, the nonmoving party. Crediting Mr. Knighten's sworn statements, as we must at this stage in the litigation, we find that Mr. Knighten's submissions create a disputed issue of fact as to whether he attempted to file grievances complaining of his post-operative treatment but prison officials never responded to them. Defendants cannot say definitively that Mr. Knighten did not attempt to exhaust his administrative remedies by submitting grievances to Ms. Maddox, but only that they cannot now find a record that one was ultimately filed. If Mr. Knighten did in fact submit a formal grievance to Ms. Maddox for submission, which was a regular practice at the prison, and prison officials either ignored, misplaced, or mishandled it, then the failure to exhaust would not be Mr. Knighten's fault.[5] This

---

[5] Defendants contend that, even if Mr. Knighten did give grievance forms to Ms. Maddox to submit, when he did not receive a response to his first complaint, he bore responsibility for ensuring that Ms. Maddox had in fact filed that grievance before filing another because he had not personally submitted the form to the grievance department. However, the Seventh Circuit has recognized that inmates "cannot be faulted for not knowing how best to respond to the prison authorities' inaction." Wilder, 2009 WL 330531, at *4 (citing Dole, 438 F.3d at 811). There is evidence in the record that, while Mr. Knighten may not have asked Ms. Maddox about the status of his grievance, he did follow up in other ways in an attempt to garner a response from prison officials, such as filing additional grievance forms and when he still received no response, speaking with Officer Nickles, a grievance specialist at Pendleton, and sending a letter to
(continued...)

determination cannot be made at the summary judgment stage, however.  See Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992) ("[S]ummary judgment is not a procedure for resolving a swearing contest."); Cameron v. Frances Slocum Bank & Trust Co., 824 F.2d 570, 575 (7th Cir. 1987) ("On summary judgment, a court can neither make a choice between competing inferences nor make a credibility determination.").

Under Seventh Circuit law, when exhaustion is contested as it is in the case at bar, the district court is to "conduct[ ] a hearing on exhaustion [ ] and permit [ ] whatever discovery relating to exhaustion [it] deems appropriate."  Pavey, 544 F.3d at 742.  Accordingly, we DENY Defendants' Motion for Partial Summary Judgment.  A hearing will be conducted on the question of Plaintiff's exhaustion of administrative remedies that will be adversarial in nature, will require the introduction of evidence, either by stipulation or otherwise, and will be preceded with an appropriate order directing disclosure in exchange of witness and exhibit information.  The parties shall report to the court by July 14, 2010 whether they believe additional discovery relative to the subject of exhaustion will be necessary, and, if so, how promptly the discovery can be completed.  A hearing date shall be set by separate order after the need for discovery, if any, is addressed.

---

[5](...continued)
Superintendent Mizes about the difficulties he (Knighten) was facing in grieving the incidents he alleges in his complaint.  Assuming that Mr. Knighten did in fact take such actions, as we are required to do at this stage in the litigation, we conclude that, though he did not respond in the manner Defendants contend he should have, the actions he did take would not preclude a fact finder from determining that he did all that he could to avail himself of the administrative process.

IT IS SO ORDERED.

Date: _____06/29/2010_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

12

Copies to:

Eric James Beaver
INDIANA OFFICE OF THE ATTORNEY GENERAL
eric.beaver@atg.in.gov

James F. Bleeke
SWEETIN & BLEEKE PC
jim@sweetinbleeke.com

Jeb Adam Crandall
SWEETIN & BLEEKE PC
jeb@sweetinbleeke.com

Brandon G. Milster
SWEETIN & BLEEKE, P.C.
brandon@sweetinbleeke.com

Christopher Carson Myers
CHRISTOPHER C. MYERS & ASSOCIATES
cmyers@myers-law.com

Ilene M. Smith
CHRISTOPHER MYERS & ASSOCIATES
ismith@myers-law.com