UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNDRAY KNIGHTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-333-SEB-TAB |
| | ) | |
| DR. MICHAEL MITCHEFF, in his | ) | |
| individual capacity, CARLA FOSTER, | ) | |
| OFFICER SPRINGFIELD, OFFICER | ) | |
| NIBBLE, SGT. SURBISKY, OFFICER | ) | |
| MILLER, LT. BROOKS, OFFICER | ) | |
| LEONARD, and OFFICER HOOD, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION REGARDING DEFENSE OF FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

For the reasons explained in this entry, Defendants' affirmative defense that Plaintiff Undray Knighten failed to exhaust administrative remedies as to one of his two claims prior to filing this lawsuit is REJECTED.

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996) was enacted, in part, "to reduce the quantity and improve the quality of prisoner suits" and to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," Porter v. Nussle, 534 U.S. 516, 524-25 (2002), and includes a provision which specifies that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.] section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Before the PLRA was enacted, no exhaustion requirement applied to § 1983 actions. The failure to exhaust as required by the PLRA is an affirmative defense and it is a defendant's burden to prove that a prisoner has not exhausted available administrative remedies. See Jones v. Bock, 549 U.S. 199, 216 (2007); Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) (citations omitted).

Mr. Knighten claims in this case that Defendants failed to provide a constitutionally adequate level of medical care to him at the Pendleton Correctional Facility ("Pendleton"). Specifically, Mr. Knighten alleges that: (1) Defendants failed to provide adequate medical care relating to the timely treatment and diagnosis of his colon cancer; and (2) Defendants failed to provide adequate medical care relating to his post-operative needs. Defendants assert that Mr. Knighten failed to comply with the exhaustion of administrative remedies requirement of the PLRA on his claim relating to his post-operative treatment and sought summary judgment as to such defense. Because there were disputed issues of fact, summary judgment was denied. Following the procedures mandated in Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008), a hearing on the failure-to-exhaust defense was conducted on November 10, 2010.

Mr. Knighten contends that, in late 2008 and early 2009, he properly filed four grievances by giving each of them to the prison counselor, Samantha Maddox, to submit, but that he failed to receive a response to any of those grievances. Mr. Knighten further claims that he spoke with the grievance specialist in early 2009 to inquire about the status

2

of his grievances and also sent a letter to the prison superintendent to complain about the lack of response he received from his complaints. However, there is no record of any of these grievances in the prison database. Thus, the question here is whether, although the prison database does not confirm receipt, Mr. Knighten gave a properly completed grievance form to an appropriate member of the prison staff to initiate the grievance process and, if so, whether that step was sufficient to exhaust available administrative remedies.

The Seventh Circuit takes "a strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). However, a prisoner is only required to exhaust those remedies that are available to him. Whether Mr. Knighten used the grievance process at Pendleton insofar as it was available to him is the relevant point of dispute here. A remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance, Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002), or otherwise use affirmative misconduct to prevent a prisoner from exhausting. Dole, 438 F.3d at 809.

The credible testimony here establishes that there was an administrative grievance process in effect at Pendleton during the relevant time period, that Mr. Knighten was acquainted with the process, and that he had on prior occasions utilized the process successfully. One accepted method of submitting a grievance at Pendleton is to give the

3

grievance to the prison counselor who in turn passes it on to the prison grievance specialist, either by mail or in person.[1] After receiving the grievance, but before substantively addressing it, the grievance specialist is responsible for logging receipt of the grievance into the computer system, thereby creating a record of the filing.

Mr. Knighten testified that, in November 2008, he gave his first grievance regarding his post-operative care to Ms. Maddox, but never received a response. According to Mr. Knighten, he subsequently gave Ms. Maddox two additional grievances regarding his post-operative treatment on January 26, 2009 and February 3, 2009, respectively, copies of which were admitted into evidence.[2] See Exhs. 1-2. After receiving no response to those complaints, he claims he submitted to her a grievance dated February 9, 2009, in which he complained about the lack of response to his prior grievances. See Exh. 3.

Although there is no record of any of these grievances in the prison database, that record is obviously only accurate as to the grievances that are actually inputted into the system by prison officials. In other words, even if a prisoner properly submits a

---

[1] During the relevant time period, Mr. Knighten was housed in a segregated area which meant that he could not deliver his grievances to the drop box himself.

[2] After failing to receive a response to the November 2008 grievance, Mr. Knighten testified that he began requesting that Ms. Maddox make copies of the grievances he subsequently submitted to her. Three copies of grievances dated January 26, 2009, February 3, 2009, and February 9, 2009 were admitted into evidence as Exhibits 1, 2, and 3. Also in evidence is a request for remittance dated January 29, 2009, and signed by Mr. Knighten, requesting forty cents remittance "to make one copy of each document (grievance forms) four pages." Exh. 8. There is no indication on the remittance request form of the date or substance of the grievances copied.

grievance to an appropriate prison official, if the prison grievance specialist does not receive it, either because it is lost or forgotten, or if the grievance specialist fails for some other reason to input the grievance into the system, there would be no record of its having been filed. Moreover, Ms. Maddox testified that she could not be certain whether Mr. Knighten had given her the grievances in question. In a signed declaration filed after the completion of the hearing, she stated that she did not recall the grievances that Mr. Knighten contends he gave her, but further testified that she had handled "probably hundreds of grievances during [her] tenure" and that Mr. Knighten "may or may not have turned these grievances in to me." Maddox Decl. ¶ 4.

Given that Defendants have the burden to prove their affirmative defense, in light of this testimony, coupled with the copies of the several grievances that Mr. Knighten contends he gave to Ms. Maddox to file, the court finds there to be sufficient circumstantial evidence in the record from which to conclude that Mr. Knighten properly filed grievances regarding his post-operative treatment. Defendants' processing system is not sufficiently precise or controlled to allow this circumstantial evidence to be rebutted. Defendants' "absence of records" defense puts them in an almost impossible bind in attempting to shoulder their burden of proof on an exhaustion affirmative defense.

Defendants argue that, even if Mr. Knighten did properly file his grievances, he nonetheless failed to exhaust his available administrative remedies because he did not appeal the non-response. However, if there is no adequate appeal process, a prisoner cannot be faulted for failing to appeal. See Dole, 438 F.3d at 809-810. It is true, here,

5

that Pendleton's grievance process provided that a prisoner would be entitled to appeal if he received no response within the established time. Exh. A at 22 ("Failure of staff to respond in accordance with the established time limit or extension at any stage of the process shall entitle the offender to move to the next stage of the process."). However, the appeal procedure outlined in the grievance policy is based on the assumption that the prisoner has received a response to his original grievance. To initiate an appeal, the prisoner must fill out an appeal form, which includes a space for the grievance number of his original grievance. Pendleton's grievance policy further provides that: "The original grievance, the grievance response, and any other information submitted with the original grievance *must be included with the appeal*." Exh. A at 20 (emphasis added). However, if the prisoner received no response to his initial grievance, he would have neither the grievance number nor copies of the original grievance and the grievance response.

It is undisputed that Mr. Knighten had used the grievance process successfully on a prior occasion, which is to say that he had previously filed a grievance on a matter unrelated to this litigation, received a response to that initial grievance, and then appealed that response. The fact that he had experience with the manner in which the process was supposed to work, coupled with the grievance policy's express requirement that the initial grievance and response be attached to any appeal, makes it reasonable for Mr. Knighten to have believed that he was required to wait until he received a response to his initial grievance before attempting to file an appeal. Mr. Knighten had no instruction on how to pursue an appeal when he did not receive a response to his original grievances.

Accordingly, we find that an appeal was unavailable to Mr. Knighten. See <u>Devbrow v. Carroll</u>, 2009 WL 2750004 (S.D. Ind. Aug. 26, 2009) (finding the appellate step of the administrative remedy process unavailable when the plaintiff had not received instructions as to how to appeal a non-response); <u>see</u> <u>also</u> <u>Lewis</u>, 300 F.3d at 833 (refusing to interpret the PLRA "so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances") (citations and quotations omitted).

For the foregoing reasons, Defendants have failed to meet their burden of proving that there was an available administrative remedy that Mr. Knighten failed to utilize before filing the instant lawsuit. Defendants' affirmative defense of failure to exhaust administrative remedies is therefore <u>REJECTED</u>.

IT IS SO ORDERED.

Date: \_\_\_\_\_01/10/2011_____

_[signature: Sarah Evans Barker]_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

James F. Bleeke
SWEETIN & BLEEKE PC
jim@sweetinbleeke.com

Matthew C. Branic
INDIANA ATTORNEY GENERAL
matt.branic@atg.in.gov

Jeb Adam Crandall
SWEETIN & BLEEKE PC
jeb@sweetinbleeke.com

Corinne T.W. Gilchrist
OFFICE OF THE INDIANA ATTORNEY GENERAL
corinne.gilchrist@atg.in.gov

Brandon G. Milster
SWEETIN & BLEEKE, P.C.
brandon@sweetinbleeke.com

Christopher Carson Myers
CHRISTOPHER C. MYERS & ASSOCIATES
cmyers@myers-law.com

Christopher D. Simpkins
SEVER STOREY LLP
chris@sweetinbleeke.com

Ilene M. Smith
CHRISTOPHER MYERS & ASSOCIATES
ismith@myers-law.com